**Vicky CHAO, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

No. 520, 1995.

Supreme Court of Delaware.

Submitted: June 19, 2001.
Decided: Sept. 20, 2001.

Richard R. Wier, Jr., Esquire, Wilmington, Delaware, for Appellant.

Steven P. Wood, Esquire, Department of Justice, Wilmington, Delaware, for the State.

Before VEASEY, Chief Justice, WALSH, HOLLAND, BERGER and STEELE, Justices, constituting the Court en Banc.

VEASEY, Chief Justice:

In this appeal, we address whether an indigent defendant in a criminal case who is represented by private counsel was constitutionally entitled to public funds to retain a medical expert who could testify

in support of the defendant's version of events. We conclude that the State was not constitutionally required to pay for the expert services sought by the defense because, in the circumstances of this case, the services were not among the "basic tools of an adequate defense." Accordingly, we affirm the judgment of the Superior Court.

█ As guidance for future cases, we also clarify that an indigent defendant represented by private counsel may be eligible in the circumstances described below to receive public funding for expert services. Such entitlement would apply where the trial court, in its discretion, determines that it would be inappropriate to require the private counsel to withdraw in favor of the Public Defender solely for the purpose of creating an avenue of entitlement to such services. In this situation, an indigent defendant represented by private counsel may request that the Superior Court exercise its discretion to allocate funds to pay for expert services if the trial court finds, after a hearing, that (1) the defendant is indigent; (2) private counsel is providing legal services without charge ("*pro bono publico* private counsel"); (3) it would in inappropriate to require *pro bono publico* private counsel to withdraw in favor of the Public Defender; and (4) the services are "necessary for adequate representation" in the circumstances. This procedure ensures that, in strictly limited circumstances, indigent defendants may obtain expert services to which they are constitutionally entitled without being required to place the entire burden of their representation on the Office of the Public Defender.

## Facts

Early in the morning of March 9, 1988, three members of William Chen's family were killed in a fire at his home. After a police investigation, the State charged Chen's former lover, Vicky Chao, and Chao's lover, Tze Poong Liu, with multiple counts of arson and murder.[1] In her testimony at trial, Chao asserted that Liu abducted her by forcing her to accompany him to Chen's house, and that she was bruised in the thigh by Liu's fist as part of his abduction of her. She then testified that she waited in Liu's car while he set fire to the house. The State presented evidence that Chao enlisted Liu to assist her in burning down Chen's home because she was angry that Chen had married another woman.

To support its theory, the State also presented the expert testimony of a medical examiner, Dr. Jonathan Arden, to refute Chao's claim that she was bruised by Liu's fist in the alleged abduction. Based on a photograph taken after Chao's arrest, Dr. Arden opined that bruising on the back of Chao's left thigh was not consistent with blows from a human fist—and, the State argued, therefore did not support Chao's abduction story.

In the summer of 1989, the jury found Chao guilty of various offenses related to the arson, including first-degree murder, first-degree arson, and first-degree burglary. The Superior Court sentenced Chao to seven consecutive terms of life imprisonment without parole. We affirmed Chao's sentence on appeal.[2]

In July 1992, Chao's husband retained private counsel to represent her during

---

1. Liu was tried separately and convicted of first-degree murder, arson, burglary and conspiracy. *See Liu v. State*, Del.Supr., 628 A.2d 1376 (1993) (affirming the judgment of the Superior Court except as to certain convictions for multiple conspiracies which were reversed and remanded for merger and resentencing).

2. *See Chao v. State*, Del.Supr., 604 A.2d 1351 (1992).

post-conviction proceedings. Chao's counsel filed a motion for post-conviction relief under Superior Court Criminal Rule 61 alleging that Chen's perjured testimony [3] had led to her conviction and that her trial counsel had provided constitutionally ineffective assistance.[4] The Superior Court agreed that the prosecution relied heavily on Chen's perjured testimony and granted Chao's motion for a new trial on that basis. Because the court granted her request for a new trial, it declined to reach her claims alleging ineffective assistance of counsel at her first trial.[5]

### A. Chao's Request for Public Funds

At Chao's second trial, she intended to testify once again that she was present at Chen's house on the night of the arson only because Liu abducted her and forced her to accompany him. Before trial, the State notified the defense that it intended to present Dr. Arden's expert testimony concerning the bruise on Chao's thigh. Dr. Arden was prepared to testify, as he had at Chao's first trial, that the bruise shown in the photograph was inconsistent with the blows described by Chao because the bruise was probably caused by a broad, flat surface larger than a fist or arm.

To impeach this testimony and to corroborate her own version of events, Chao intended to argue that the bruise in the photograph supported her assertion that Liu had struck her during the alleged abduction. On October 25, 1995, less than one week before the scheduled start of the trial, Chao's counsel requested that the Superior Court authorize the disbursement of public funds to retain a medical expert who could testify that the bruise was consistent with the type of blows that Chao described. Chao argued to the Superior Court that she was constitutionally entitled to public funds "under due process concepts" because she was an indigent defendant and the expert testimony was critical to her case. Although Chao was represented at the second trial by private counsel, she argued that counsel had essentially agreed to represent her without compensation after the Superior Court granted her Rule 61 petition.

The Superior Court gave Chao until October 27, 1995, to locate and identify an expert who would be willing to testify about the bruise, but the court denied Chao's request for public funds to retain the expert. The court also specifically warned Chao's counsel that the expert "isn't going to come in" if the expert was not identified by the October 27, 1995 deadline. Although Chao's counsel had contacted medical experts about testifying without compensation, Chao was unable to find an expert willing to appear free of charge.[6]

### B. Chao's Mid–Trial Request to Present Expert Testimony

As expected, Dr. Arden opined in his direct testimony at trial that Chao's bruise

---

**3.** During Liu's later trial for his role in the arson, Chen admitted that he had lied about the nature and extent of his romantic relationship with Chao in the years before the arson.

**4.** Among the alleged deficiencies in trial counsel's performance, Chao argued that counsel failed to conduct an adequate cross-examination of Dr. Arden concerning the difficulty of assessing the age and origin of the bruise based solely on a photograph of the bruise.

**5.** *See State v. Chao,* Del.Super., Cr. A. Nos. IN88–03–1021–25 & 1027–28, IN88–04–0832–36, 1995 WL 412364 (Feb. 17, 1995) (Mem.Op.).

**6.** It later turned out that one expert whom defense counsel had contacted about appearing *pro bono* was not qualified to offer expert testimony on Chao's bruise.

could not have been caused by any type of blow by Liu's hand or arm. After cross-examining Dr. Arden, Chao's counsel concluded that he had failed to elicit sufficient concessions concerning the nature and origin of the bruise,[7] and he decided to renew his search for a defense expert. On December 4, 1995, near the end of the State's case-in-chief, defense counsel located an expert who was willing to testify that Chao's bruise could have been caused by blows from the side of a fist or forearm,[8] and requested the trial court's permission to call the expert during the defense case-in-chief. The court denied this request because counsel had not notified the State of the identity of the expert before October 27, 1995, as required by the court's earlier discovery ruling.

At the conclusion of her second trial, the jury found Chao guilty of three counts of first-degree felony murder and various other offenses. In December 1995, the Superior Court sentenced Chao to three consecutive life sentences.

On appeal to this Court from her second trial, Chao argued that the Superior Court erred in failing to reach the merits of her ineffective-assistance claim and in refusing her request for public funds to hire a medical expert. The Court remanded the case to the Superior Court for consideration of Chao's allegations that her counsel in the first trial was ineffective.[9] The

Superior Court found that Chao's ineffective assistance allegations were without merit,[10] and we affirmed the Superior Court's judgment on that issue.[11]

Upon review of our January 23, 1998 order, however, Chao's new appellate counsel discovered that the Court did not rule on two issues that Chao had raised in her second direct appeal. In response to Chao's request, the Court recalled the mandate on her case in order to decide those issues.[12] After supplemental briefing and oral argument, this is the Court's ruling on those issues.

### *Provision of Public Funding to Retain Defense Experts*

Chao challenges the Superior Court's denial of her request for public funding on three principal grounds. First, Chao argues that, pursuant to *Ake v. Oklahoma*,[13] she was entitled to public funds to retain a medical expert because she was indigent and because the expert's services were vital to her defense. Second, she contends that the trial court failed to conduct a full hearing to determine whether she was indigent and, thus, entitled to State funds to retain an expert. Third, Chao challenges, on various grounds, the validity of the procedure for handling requests for public funds by indigent defendants who are represented by private counsel.

---

7. Defense counsel expected that Dr. Arden would concede that the bruise on Chao's thigh could have been caused by the side of a fist or forearm.

8. Notably and commendably, Chao's counsel agreed to pay for the expert's services from his own funds.

9. *See Chao v. State*, Del.Supr., No. 520, 1995, Holland, J. (April 11, 1997) (ORDER). In her second direct appeal, Chao was represented by the Office of the Public Defender.

10. *See State v. Chao*, Del.Super., Cr. A. Nos. IN88–03–1021–25 & 1027–28, IN88–04–0832–36 (Aug. 11, 1997) (Findings on Remand).

11. *See Chao v. State*, Del.Supr., No. 520, 1995, 1998 WL 112527, Veasey, C.J. (Jan. 23, 1998) (ORDER).

12. *See Chao v. State*, Del.Supr., No. 520, 1995, Veasey, C.J. (Nov. 17, 2000) (ORDER).

13. 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985).

## A. Mootness

As an initial matter, the State contends that the trial court's denial of Chao's request for public funds is moot because Chao cannot show an injury from the court's decision.[14] The State observes that Chao did not submit her request for public funding until October 25, 1995, and that the trial court required Chao to identify any experts she wished to call by October 27, 1995. The State argues that Chao cannot prove injury from the court's decision because the State doubts whether Chao could have located a qualified expert within two days if the court had agreed to provide her with public funds.

■ We do not find this argument persuasive because it is necessarily speculative: Chao had no reason to attempt to find a *paid* expert in the time allotted since she had no funds with which to pay the expert.[15] Although it is possible that Chao's efforts to locate an expert in time would have failed even if she had had sufficient funding, it is also possible that she would have succeeded before the deadline if public funds had been available.[16] Indeed, when Chao's counsel elected to pay for an expert himself, he was able to locate a qualified expert on relatively short notice. As a result, we conclude that Chao's argument that the trial court erred by refusing to provide public funding for a medical expert is not moot. We therefore address the merits of this issue.

## B. Constitutional Entitlement to Public Funding for Indigent Defendants

■ In *Office of the Public Defender v. Thompson*,[17] we outlined the procedure by

---

14. An issue becomes moot if intervening events cause a party to lose its standing to pursue the issue during the pendency of the action. *See General Motors Corp. v. New Castle County*, Del. Supr., 701 A.2d 819, 823 (1997). A party has standing to pursue an issue where " '1) there is a claim of injury-in-fact; and 2) the interest sought to be protected is arguably within the zone of interest to be protected or regulated by the statute or constitutional guarantee in question.' " *Id.* (quoting *Gannett Co. v. State*, Del.Supr., 565 A.2d 895, 897 (1989)). In the present case, the parties dispute only whether the court's denial of Chao's request caused an injury-in-fact to Chao—that is, whether Chao could have located an expert if the court had provided her with public funding.

15. Similarly, there is no reason to expect Chao to create a record, as the State suggests, "which would support the notion that such [public] funding, given the last-minute nature of the request, would have enabled the appellant to secure the services of a qualified expert witness and then comply with her discovery obligations by the trial court's reasonable October 27, 1995 deadline."

16. The State emphasizes that the expert who, Chao's counsel hoped, would testify free of charge was later determined to be unqualified

as an expert on the relevant issue. But this observation does not bear on the underlying question of whether Chao could have obtained a qualified expert if she had been provided with funds. Put differently, there is no reason to assume that the unqualified expert was the only expert who would have been willing to testify if Chao had had sufficient funding to pay for the services. The fact that her *pro bono* expert was not qualified merely reinforces Chao's argument that the absence of sufficient funding limited the range of experts available to her.

17. Del.Supr., 451 A.2d 835, 837 (1982); *see also Bailey v. State*, Del.Supr., 438 A.2d 877, 878 (1981) ("[A] defendant who is indigent but who manages (through the assistance of others) to retain counsel is not entitled ... to funding from the Public Defender's appropriation to employ an investigator as part of his defense effort."). The *Bailey* Court was aware that this rule would produce a potentially anomalous result: "[A]n indigent defendant who relieves the public of the burden of representing him cannot secure investigative assistance which he can get (under the Public Defender Act) if he places the entire burden on the public." *Bailey*, 438 A.2d at 878. Nevertheless, the Court found that this result "is consistent with the almost universal rule

which an indigent defendant with private counsel could request public funds to pay for private experts. First, a request for public funds to retain an expert witness must be "deemed an application [by private counsel] for leave to withdraw as counsel and for representation thenceforth by the Public Defender on the ground of indigency." Second, the trial court must determine whether the defendant is indigent and thus eligible to receive assistance from the Public Defender under 29 *Del. C.* § 4602(b). Third, if the trial court finds that the defendant is indigent, the court is instructed to permit the defendant's private counsel to withdraw and to refer the defendant's case to the Public Defender. With the consent of the defendant, private counsel may assist the Public Defender with the defendant's case, but private counsel cannot be paid from public funds.

The *Thompson* Court predicated these guidelines on three general principles:

> (1) The assistance of privately retained counsel in criminal cases should not be discouraged; (2) an indigent defendant must not be deprived of essential professional assistance in the defense of his case; but (3) public funds appropriated

to the Office of the Public Defender may not be expended for defense purposes except by decision of that Office.

We later endorsed the *Thompson* guidelines as an appropriate way "to balance a defendant's limited right to choose her own counsel and various public interests, including the fixing of budgetary responsibility and the limited funds available." [18]

The trial court here noted that, in an unusual case, an indigent defendant may be entitled to public funds to retain an expert on complex or novel technical issues—even where it would not be appropriate to substitute the Public Defender for private counsel under *Thompson*.[19] But the trial court held that the present case does not involve unusual circumstances that justify a departure from the procedure set out in *Thompson*, adding:

> I also am not 100 percent convinced that the defendant is indigent in the sense that she or her family does not have the resources to [hire the expert]. And in saying that, I'm aware of the fact that prior to the previous trial [in 1989], there was no problem in posting significant case bail to release her to the community. . . . [20]

---

that, absent statutory authority, a court will not appoint a private investigator for an indigent defendant at public expense." *Id.* We address in more detail below Chao's challenges to the validity of this procedure.

**18.** *Shipley v. State*, Del.Supr., 570 A.2d 1159, 1171 (1990).

**19.** As an example of unusual circumstances, Chao suggests that courts authorized the use of public funds to hire an expert during the Pennell capital murder prosecution, despite the fact that Pennell had retained private counsel. During arguments before the Superior Court, the State argued that the Pennell case is distinguishable because the prosecution required the defendant to respond to complex and relatively novel DNA evidence presented by the State. The State therefore argued that *Pennell* essentially created an ex-

ception to the general rule in *Thompson* for unusual cases in which a defendant could not effectively present a defense without a particular expert.

**20.** Relying on this statement, Chao argues that the trial court violated her right to due process because it employed deficient procedures in determining that she was not indigent at the time of the second trial. Specifically, Chao contends that the trial court did not conduct a hearing on whether she satisfied the criteria for indigency, and it refused defense counsel's offer to provide an affidavit describing her financial condition. *See Potter v. State*, Del.Supr., 547 A.2d 595, 598 (1988) ("The defendant has the burden of establishing a right to counsel at public expense, but he is entitled to a hearing on the issue of indigency.") (citing *Stacey v. State*, Del.Supr.,

The trial court did not expressly rule on Chao's request for public funds as a motion to withdraw under *Thompson*, but Chao implicitly concedes that the trial court could properly refuse a motion by Chao's private counsel to withdraw in favor of the Public Defender less than a week before the scheduled start of the trial—particularly given the expectation that replacement counsel would require considerable time to prepare for such a complex case.[21] Chao nevertheless maintains that, as an indigent defendant, she was constitutionally entitled under the Due Process Clause of the Fourteenth Amendment to public funds to retain expert services that were necessary to an adequate defense.[22] The State responds that, absent extreme circumstances, a defendant who is represented by private counsel is not entitled to public funding to retain expert or investigative services.[23]

■ Although the State is not constitutionally obligated to "purchase for the indigent defendant all the assistance that his wealthier counterpart might buy," the State is required to provide the " 'basic tools of an adequate defense or appeal' . . . to those defendants who cannot afford to pay for them." [24] Similarly, this Court has

358 A.2d 379, 380 (1976) (*per curiam*)). Although it is clear from the record that the trial court did not conduct a proper hearing on indigency as required by *Potter*, the trial court's ruling did not depend on its conclusion that Chao was not indigent. Accordingly, we do not rely on its apparent conclusion that Chao was not indigent.

21. *See Petition of Briley*, Del.Supr., No. 371, 1992, 1992 WL 219070, Horsey, J. (Aug. 21, 1992) (ORDER), Order at ¶ 7 (affirming trial court's decision to deny counsel's "motion to withdraw as untimely, especially in the absence of the appearance of any other attorney for defendant to permit the trial to proceed"). Delaware Lawyers' Rule of Professional Conduct Rule 1.16(b) permits a lawyer to withdraw from representing a client "if withdrawal can be accomplished without material adverse effect on the client." Even if the lawyer has "good cause" for withdrawal, a court may require continued representation under Rule 1.16(c).

22. Chao also argues that her right to effective assistance of counsel under the Sixth Amendment entitles her to public funding to retain a medical expert who "could have assisted [defense counsel] in evaluating the photographs, in preparing cross-examination of the State's expert and in testifying in rebuttal of the State's expert."

23. The State also argues that a defendant is "indigent" only if the defendant does not have representation and cannot afford to retain a lawyer. Since Chao's postconviction counsel

agreed to represent her in the new trial without further payment, the State argues, Chao is not indigent and thus cannot be entitled to public funding for expert services. Although the term indigent is a legal term of art, the Supreme Court has recognized that the underlying inquiry is whether the defendant has the resources to put on a constitutionally adequate defense. *See Ake v. Oklahoma*, 470 U.S. 68, 77, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). Similarly, we have held that an indigent defendant's right to an adequate defense funded by the State "is not lost by an indigent defendant who has parents financially able to pay the expenses of appeal, . . . or the fees of privately-retained counsel." *Pendry v. State*, Del.Supr., 367 A.2d 624, 626 (1976) (citations omitted). Thus, although Chao was represented by private counsel retained by her husband, we assume for purposes of deciding this issue that her counsel was acting on a volunteer basis and that Chao was indigent.

24. *Ake*, 470 U.S. at 77, 105 S.Ct. 1087 (quoting *Britt v. North Carolina*, 404 U.S. 226, 227, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971)); *see also id.* ("[I]t has often reaffirmed that fundamental fairness entitles indigent defendants to 'an adequate opportunity to present their claims fairly within the adversary system. . . .' ") (citation omitted); *cf. Ross v. Moffitt*, 417 U.S. 600, 616, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974) ("The duty of the State under our cases is not to duplicate the legal arsenal that may be privately retained by a criminal defendant in a continuing effort to reverse his conviction, but only to assure the indigent defendant

held that an indigent defendant is entitled to have investigative services provided by the State, but only if the defendant "is able to show that such services are reasonably necessary for the preparation of an adequate defense." [25]

To determine whether a particular form of assistance is a "basic tool[ ] of an adequate defense," the United States Supreme Court in *Ake v. Oklahoma* balanced: (1) the defendant's private interest in having access to the assistance; (2) the State's interests that may be affected by the provision of the assistance (generally the financial burden); and (3) "the probable value of the additional or substitute procedural safeguards that are sought, and the risk of an erroneous deprivation of the affected interest if those safeguards are not provided." [26]

The outcome of the balancing test in the present case depends largely on the importance of the requested expert testimony to Chao's defense—that is, the "probable value" of the testimony and the risk of an incorrect outcome in the absence of the testimony. Chao argues that the requested medical expert testimony is "critical" to her defense because it would contradict the State's expert and corroborate Chao's assertion that she was taken by force to the scene of the arson.

Although Chao's proposed expert testimony may have further impeached Dr. Arden's testimony and supported Chao's defense, we find that the absence of the testimony did not significantly prejudice the defense [27] or increase the risk that the jury would convict her erroneously.[28] Defense counsel thoroughly cross-examined the State's expert, Dr. Arden, on the basis of his opinions and on alternative causes of Chao's bruise. Although Dr. Arden opined that the bruise was caused by a single impact that was inconsistent with a series of blows by a fist, he conceded on cross-examination that "it is entirely possible that there was more than one blow administered and that there was overlapping

an adequate opportunity to present his claims fairly in the context of the State's appellate process.").

**25.** *Van Arsdall v. State*, Del.Supr., 486 A.2d 1, 15 (1984), *rev'd on other grounds* 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). Since "the defendant's right to psychological or psychiatric assistance in a criminal case rises to higher levels than investigative assistance," *Thompson*, 451 A.2d at 837, the standard announced in *Van Arsdall* also applies to the present case.

**26.** *Ake*, 470 U.S. at 77–78, 105 S.Ct. 1087. We note that the United States Supreme Court has since intimated that this balancing test may not be the proper mode of analysis in the due process context, but the court has not explicitly rejected the analysis. *Compare Medina v. California*, 505 U.S. 437, 444–45, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992) (holding that the Court will not overrule a state court decision "under the Due Process Clause unless 'it offends some principle of justice so rooted in the traditions and conscience of our

people as to be ranked as fundamental' ") (quoting *Patterson v. New York*, 432 U.S. 197, 201–02, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977)) *with id.* at 453, 112 S.Ct. 2572 (O'Connor, J. and Souter, J. concurring in judgment) ("The balancing of equities ... remains a useful guide in due process cases."). The Court in *Ake* found that it would not impose a substantial burden on the state to provide a psychological expert for the defense in cases where the defendant's competency is at issue. *See Ake*, 470 U.S. at 78, 105 S.Ct. 1087.

**27.** *Cf. Maxion v. State*, Del.Supr., 686 A.2d 148, 151 (1996) ("On appeal, the defendant must show by clear and convincing evidence that substantial prejudice resulted from the denial of funds for the requested investigative services.").

**28.** *See Maxion*, 686 A.2d at 151 ("On appeal, the defendant must show by clear and convincing evidence that substantial prejudice resulted from the denial of funds for the requested investigative services.").

which [he] cannot discern in the crude photography." Dr. Arden also agreed that "if [Chao] were grabbed by the head of the hair, was partway out [of a car] and hit the side of the car . . . that could account" for the injury on Chao's leg. This testimony, of course, tended to support Chao's theory.

The additional detail or nuances that a defense expert might have added would have been helpful to Chao, but only marginally. For example, the expert whom Chao's counsel retained during the trial offered to testify that the bruise could have been the result of between two and five punches delivered by the driver of a car against the leg of a person in the passenger seat.[29] There is no significant difference between expert testimony of the sort eventually proffered by the defense and the concessions elicited from Dr. Arden on cross-examination. Accordingly, we conclude that the expert testimony for which Chao requested public funding would only have marginally improved Chao's position on this issue, and therefore was not "reasonably necessary for the preparation of an adequate defense."[30] As a result, the trial court's decision to refuse Chao's requests was not an abuse of discretion and did not deny Chao an opportunity to present an adequate defense or otherwise infringe her constitutional rights to due process and effective assistance of counsel.[31]

## C. Clarification of the Thompson Rule

■ The final question is whether the procedures set out in Thompson strike an appropriate balance between an indigent defendant's need to present a defense and the State's interest in controlling the expenditure of public funds. We note at the outset that the procedure described in Thompson does not implicate an indigent defendant's constitutional rights to effective assistance of counsel and equal protection.

■ The Thompson guidelines do not violate an indigent defendant's right to effective assistance of counsel because they do not preclude the provision of public funds to indigent defendants for the purpose of retaining critical expert services. Rather, Thompson requires that the defendant accept the services of the Public Defender before such funding is disbursed. Although indigent defendants

---

**29.** Chao's counsel represented that the expert would testify:
   a. The photograph is not of great quality, and there are some problems in making definitive opinions.
   b. The bruise in question on the left thigh was caused by trauma imposed within five days of the taking of the photograph.
   c. The bruise could have resulted from the application of a fist to the area where the bruise was located while someone was situated behind the driver's side of a vehicle and while the defendant was situated in the front passenger seat.
   d. The bruise could result from as few as two blows, but less than five blows to the area.

**30.** Van Arsdall, 486 A.2d at 15. We find that the present case is thus distinguishable from

*Ake*, in which the Supreme Court concluded that "without the assistance of a psychiatrist to conduct a professional examination on issues relevant to the defense, to help determine whether the insanity defense is viable, to present testimony, and to assist in preparing the cross-examination of a State's psychiatric witnesses, the risk of an inaccurate resolution of sanity issues is extremely high." *Ake*, 470 U.S. at 83, 105 S.Ct. 1087.

**31.** Because we find no error in the trial court's decision, there is no need to reach Chao's argument that a trial court's refusal to provide public funds to retain an expert in violation of an indigent defendant's constitutional rights is a "structural defect" warranting automatic reversal under *Arizona v. Fulminante*, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991).

may be required to give up their chosen private counsel, in some circumstances, it is well established that the Sixth Amendment guarantees only an effective advocate for defendants in criminal cases and does not require that defendants be represented by their lawyer of choice.[32]

Chao also argues that the rule announced in *Thompson* violates the Equal Protection Clause of the Fourteenth Amendment. In particular, Chao contends that indigent defendants represented by the Public Defender or by court-appointed counsel under Superior Court Criminal Rule 44 are eligible for public funds to hire experts, whereas indigent defendants who manage to secure *pro bono publico* private counsel are not eligible for such funds.[33] This disparate treatment, Chao argues, violates the principle of equal protection because "there is no meaningful distinction between the two classes of indigent defendants."

■ We do not find this argument persuasive. The question under the Equal Protection Clause is whether the distinc-

tion in *Thompson*—that is, between indigent defendants represented by the Public Defender or court-appointed counsel on the one hand and indigent defendants represented by private *pro bono publico* counsel—is "rationally related to a legitimate governmental purpose."[34] Because the distinction between the two classes of indigent defendants is designed to preserve the State's ability to assign budgetary responsibility in light of the limited funds available, we conclude that the distinction is neither arbitrary nor irrational.[35]

■ Nonetheless, we conclude that the guidelines announced in *Thompson* require some clarification for application in future cases where the trial court determines, in its discretion, that it would be inappropriate to require private counsel to withdraw in favor of representation by the Public Defender. In this situation, the trial court must determine whether an indigent defendant represented by *pro bono publico* private counsel is constitutionally entitled to public funds to retain expert services to assist in the preparation of an adequate defense.[36]

**32.** *See Shipley,* 570 A.2d at 1171 (citing *Wheat v. United States,* 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988)).

**33.** This argument essentially mirrors the potential anomaly identified by this Court: "[A]n indigent defendant who relieves the public of the burden of representing him cannot secure investigative assistance which he can get (under the Public Defender Act) if he places the entire burden on the public." *Bailey v. State,* Del.Supr., 438 A.2d 877, 878 (1981). The *Bailey* Court concluded that this result "is consistent with the almost universal rule that, absent statutory authority, a court will not appoint a private investigator for an indigent defendant at public expense." *Id.*

**34.** *City of Cleburne, Tex. v. Cleburne Living Center,* 473 U.S. 432, 466, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). Rationality review applies where no suspect class or fundamental right is involved. *See Turnbull v. Fink,* Del. Supr., 668 A.2d 1370, 1379 (1995). Under

the Equal Protection Clause, "[t]he State may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational." *City of Cleburne,* 473 U.S. at 466, 105 S.Ct. 3249 (citation omitted).

**35.** *Shipley v. State,* 570 A.2d 1159, 1171 (1990); *see also Miller v. Smith,* 4th Cir., 115 F.3d 1136, 1141–42 (1997) (holding that under the Fourteenth Amendment, "the State of Maryland's system, which requires an indigent criminal defendant to apply for legal representation with the Public Defender's Office as a prerequisite to obtaining a free transcript in connection with an appeal, gives indigent criminal defendants an adequate opportunity to present claims on appeal").

**36.** As we observed in a different context, we believe that an indigent defendant's right to an adequate defense funded by the State should not be lost where the defendant is

Specifically, a defendant who is represented by *pro bono publico* private counsel must first request that the Superior Court, in its discretion, allocate funds to pay for expert services.[37] The trial court may grant such a request if it finds, after a hearing, that the following four conditions are met: (1) the defendant is indigent; (2) that counsel is providing the lawyer's professional services without charge; (3) it would be inappropriate to require such private counsel to withdraw in favor of the Public Defender; and (4) the expert services are "necessary for adequate representation" in the circumstances.[38] In this manner, *pro bono publico* private counsel may request reimbursement for out-of-pocket expenditures required to retain necessary expert services without having to request reimbursement from the State for legal services rendered or without withdrawing in favor of the Public Defender.

The State argues that permitting indigent defendants represented by *pro bono publico* private counsel to request public funds for expert services would produce "a judicially-created hodgepodge in which some indigent defendants would be wholly represented by privately-retained counsel who would nonetheless be able to draw upon public resources for the provision of expert witness and (perhaps) investigators." To support its argument, the State contends that the potential fallout from the proposed rule could involve the following: (1) potential claims for public funding could overburden the system because non-indigent defendants may receive the benefit of public funding for experts and (2) the Office of the Public Defender would lose its ability to control its budget.

We do not find the State's arguments persuasive. First, the determination of indigency, and thus eligibility to be represented by appointed counsel under Superior Court Criminal Rule 44 or by the Public Defender under 29 *Del. C.* § 4602(b) is a routine practice.[39] Trial courts are regularly called upon to determine whether investigative or expert services are "necessary to an adequate defense" under Rule

---

fortunate enough to find private counsel willing to represent the defendant free of charge. *Cf. Pendry v. State*, Del.Supr., 367 A.2d 624, 626 (1976) ("That right is not lost by an indigent defendant who has parents financially able to pay the expenses of appeal ... or the fees of privately-retained counsel.") (citations omitted). The trial court implicitly recognized this principle when it ruled that no "extraordinary circumstances" were present in this case that would justify a departure from the *Thompson* guidelines. Although the trial court did not employ the constitutional analysis described above, we find that the court nevertheless reached the appropriate conclusion.

37. Under Administrative Directive Number Seventy–Seven dated November 9, 1987, the Superior Court may approve a request for the reimbursement of expenses relating to expert and investigative services where the request is for an amount less than $1000. This Court must approve any requests for funds in excess

of $1000. We note that investigative services are less vital to the defense than medical expert testimony, *see Thompson*, 451 A.2d at 837, and must therefore meet a higher standard to be considered "necessary for adequate representation."

38. The trial court should focus on whether the services are central to the defense and whether the absence of the services creates a significant risk of an erroneous verdict. *See Ake*, 470 U.S. at 77–78, 105 S.Ct. 1087. In addition, the trial court may consider whether the defendant has strategically delayed a request for public funds until shortly before trial to increase the likelihood that the court will refuse to appoint the Public Defender and grant the defendant's request for public funds.

39. 29 *Del. C.* § 4602(b) provides: "Before arraignment the determination of indigency may be made by the Public Defender. At or after arraignment the determination shall be made by the court."

44(e). Moreover, public funding would be available only in relatively limited situations noted above where the four conditions are met. In our view, these procedures would not open the floodgates to a raft of meritless claims for public funds.

Second, although the *Thompson* rule is ostensibly designed to ensure that the Office of the Public Defender can effectively control its budget, courts already exercise considerable discretion in the allocation of the Office's personnel and resources by determining whether a defendant is eligible to be represented by the Public Defender.[40] More important, the funds disbursed under the procedures described above are not drawn from the operating budget of the Office of the Public Defender. They are funds allocated to reimburse court-appointed attorneys for necessary expenses under Rule 44(e), under the control of the Administrative Office of the Courts. As a result, the Office of the Public Defender is not likely to lose control over its budget or have its resources drained by requests from indigent defendants represented by *pro bono publico* private counsel.

### Denial of Chao's Mid–Trial Request to Present Expert Testimony

■ Chao also argues that the trial court abused its discretion when it refused to grant her request, made during the trial, to present a medical expert to rebut Dr. Arden's testimony. As noted above, the trial court informed Chao's counsel on October 25, 1995, that he was required to identify by the end of that week any defense experts he intended to call. Counsel did not identify an expert by the court's deadline. It was not until December 4, 1995, just before the State concluded its case-in-chief, that defense counsel notified the court that he had retained an expert to testify on the nature and origin of the bruise on Chao's thigh. Because this request did not conform to the court's earlier ruling, the court rejected as untimely defense counsel's request to present this testimony. We review the trial court's decision to exclude expert testimony as a sanction for a violation of discovery rules to determine whether the court abused its discretion.[41]

■ Superior Court Criminal Rule 16(b)(1)(C) provides that the defense must disclose to the State before trial the identity of all expert witnesses and the substance of their testimony. Where the trial court finds a violation of this rule, the court may "prohibit the party from introducing evidence not disclosed."[42] Before imposing this sanction, however, the court must "balance the needs of society with the defendant's right to a fair trial."[43] Specifically, the court should consider the reasons for the belated disclosure and the likelihood of prejudice to each party.[44]

---

**40.** *See Potter v. State,* Del.Supr., 547 A.2d 595, 601 (1988) ("[I]f the defendant is not indigent and only has the marginal financial ability to retain private counsel, Superior Court Criminal Rule 44 imposes an additional duty upon the Superior Court to make a determination as to whether or not it is appropriate to appoint counsel. This determination is addressed to the sound discretion of the Superior Court after taking into consideration the nature of the charge, the defendant's financial resources, and the efforts that the defendant has made to retain counsel."); Super. Ct.

Crim. R. 44(e)(4) (permitting trial court to reimburse court-appointed counsel for the cost of retaining experts).

**41.** *See DeJesus v. State,* Del.Supr., 655 A.2d 1180, 1207 (1995) (holding that the trial court has broad discretion to sanction violations of discovery rules).

**42.** Super. Ct.Crim. R. 16(d)(2).

**43.** *DeJesus,* 655 A.2d at 1207.

In the present case, Chao presents two primary explanations for her failure to notify the State of her intention to present an expert during the defense case-in-chief. In particular, Chao argues that her counsel believed, incorrectly as it turns out, that Dr. Arden would concede that the bruise on Chao's leg could have been caused by the side of a fist or forearm. Because Dr. Arden refused to concede this precise point during cross-examination, Chao argues that the content of the testimony of the witness was a surprise.

The trial court concluded that counsel's decision not to disclose an expert was the result of a mistaken strategic choice rather than unfair surprise. Dr. Arden's testimony on direct examination during the second trial was substantially the same as his testimony at the first trial. Whether counsel's cross-examination of Dr. Arden at the second trial was sufficiently effective to avoid the necessity of presenting a defense expert is a decision involving trial strategy—given Chao's limited funds and the expense of procuring an expert. Counsel's decision no doubt also was based on the court's denial of his request for public funds to retain an expert. Thus, even assuming *arguendo* that the expert would have substantially improved Chao's position, the only "surprise" at the second trial

was that Dr. Arden was more confident in his conclusion than Chao's counsel had anticipated.[45] Based on our review of the record, Dr. Arden did make some modest concessions on cross-examination that were helpful to Chao at the second trial, and the proffered expert testimony would have improved Chao's position only marginally.[46]

■ A mistaken strategic choice by counsel cannot justify a failure to notify the State of the identity of an expert before the start of the trial. The belated notification of a proposed defense expert makes it difficult for the State to prepare a specific response to the expert's proposed testimony—even where the State is aware of the general direction of the testimony. Moreover, a mid-trial continuance to permit Chao to obtain expert testimony (and to permit the State to respond) would likely impair the Superior Court's ability to manage its cases.

■ Based on these considerations, the trial court could, in our view, properly refuse to permit Chao's expert to testify based on Chao's failure to adhere to the trial court's discovery order in violation of Rule 16(b)(1)(C).[47] As a result, we hold that the trial court did not abuse its discretion by denying Chao's mid-trial request to present the testimony of a medical expert.

---

**44.** *See id.* For example, the Rhode Island Supreme Court has identified three factors that courts should consider in applying a sanction for a nondisclosure violation: "(1) the reason for the nondisclosure, (2) the extent of prejudice, (3) the feasibility of rectifying the prejudice by a continuance" rather than by excluding the evidence. *State v. Bowling*, R.I.Supr., 585 A.2d 1181, 1184 (1991) (cited in *DeJesus*, 655 A.2d, at 1207).

**45.** Chao also argues that she was unable to disclose the identity of the expert witness before the court's deadline because she was indigent and was only able to retain the ex-

pert because her counsel agreed to pay the expert's fees himself. This argument is not significantly different from Chao's unfair surprise argument because both arguments are based on defense counsel's belief that the cross-examination of Dr. Arden would be an adequate substitute for a defense expert.

**46.** *See* discussion at pages 1069–1070, *supra*.

**47.** *Cf. DeJesus*, 655 A.2d at 1207 (affirming exclusion of expert witness where defendant notified the State about the expert on the first day of trial without sufficient explanation).

### Conclusion

For the reasons set forth in this Opinion, we affirm the judgment of the Superior Court.